■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAHASHEEM BROWN, Appellant. [860 NYS2d 259]—

Stein, J. Appeal from a judgment of the County Court of Schenectady County (Richards, J.), rendered February 24, 2006, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the third degree (three counts).

Two State Police investigators were conducting an undercover buy and bust operation in the City of Schenectady, Schenectady County. As they drove down Emmett Street in an unmarked car, they nodded at defendant to get his attention and he responded by motioning them to pull over on Hamlin Street, a nearby cross street. Defendant then approached the passenger side of the vehicle and spoke with Investigator Frank Cameron before agreeing to sell him two pieces of crack cocaine for $20. One $10 bill and two $5 bills were exchanged for the cocaine. After asking to be shown the size of the pieces of cocaine, Investigator Richard Butterfield also purchased $20 worth of cocaine. Butterfield then asked defendant if he would be out all day, to which defendant responded that he would and provided the investigators with his cellular telephone number. This conversation was transmitted to a different location, where it was recorded. After defendant left, Cameron radioed a description of defendant to police officers in a marked patrol car. Defendant apparently saw the marked car and dropped what was later identified as currency and packages of crack cocaine on the sidewalk before he

was arrested near the location where the drug buy occurred. Cameron and Butterfield subsequently identified defendant as the person who sold them the crack cocaine. Two of the bills recovered from the sidewalk where defendant was seen dropping the currency matched the serial numbers of buy money provided to the undercover investigators. Defendant's personal effects, including his cellular telephone, were inventoried at the jail.

Defendant was indicted by a grand jury on two counts of criminal sale of a controlled substance in the third degree and three counts of criminal possession of a controlled substance in the third degree. Defendant filed a pretrial omnibus motion that sought, among other things, a *Wade* hearing, a *Mapp* hearing and a *Sandoval* hearing. County Court granted the motion as to the *Sandoval* hearing only. At the hearing, County Court determined that defendant could be asked on cross-examination about 8 of the 11 prior convictions and bad acts the People sought to use to impeach his testimony. Defendant did not testify at trial. He was convicted of two counts of criminal sale of a controlled substance in the third degree and three counts of criminal possession of a controlled substance in the third degree and was sentenced as a second felony offender to an 11-year prison sentence with three years of postrelease supervision. Defendant now appeals.

Initially, we reject defendant's contention that he was selectively prosecuted in violation of his constitutional right to equal protection. Defendant has failed to demonstrate that "the law was not applied to others similarly situated [and] that the selective application of the law was deliberately based upon an impermissible standard such as race, religion or some other arbitrary classification" (*Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 693 [1979]; *see Yick Wo v Hopkins*, 118 US 356, 373-374 [1886]; *People v Blount*, 90 NY2d 998, 999 [1997]). Moreover, there is no constitutional right to plead guilty to a lesser offense (*see People v Cohen*, 186 AD2d 843, 844 [1992]).

Turning to the merits, we find that County Court properly denied defendant's motion for a *Wade* hearing to determine the admissibility of the identification of defendant by the investigators. The identification made by trained undercover investigators who observed defendant in the course of a face-to-face drug transaction, knowing that defendant would be imminently arrested, is "not of a kind ordinarily burdened or compromised by forbidden suggestiveness, warranting a lineup procedure or *Wade* hearing" (*People v Wharton*, 74 NY2d 921, 922 [1989]).

Similarly, County Court properly denied defendant's motion

for a *Mapp* hearing to determine the admissibility of the drug and currency evidence recovered from the sidewalk. Because defendant did not have a reasonable expectation of privacy over items intentionally dropped onto a public sidewalk (*see People v Ramirez-Portoreal*, 88 NY2d 99, 113 [1996]), there was no legal basis for suppressing the evidence and a *Mapp* hearing was not required (*see People v Burton*, 6 NY3d 584, 587 [2006]).

Furthermore, a sufficient foundation was laid for admission of the "buy money" into evidence. The bills were photocopied before they were given to the undercover investigators to conduct the controlled buy. Therefore, a simple identification by a witness familiar with the bills was sufficient to lay a foundation, since the bills were readily identifiable by their serial numbers, thus possessing " 'unique characteristics or markings' and any material alteration would be readily apparent" (*see People v McGee*, 49 NY2d 48, 60 [1979], quoting *People v Connelly*, 35 NY2d 171, 174 [1974]). Here, that identification was supplied by the testimony of Officer Sean Clifford, who made the arrest and recovered the money (*see People v Connelly*, 35 NY2d at 174; *People v Washington*, 96 AD2d 996, 997 [1983]). Even if evidence of a chain of custody was required, the evidence here—particularly, the testimony of Clifford, Detective Daniel Moran and Detective William Relyea—was sufficient to establish a chain of custody of the bills from the time of the crime to the time of trial (*see People v Connelly*, 35 NY2d at 174). The absence of testimony by Investigator Sammy Mercado, who photocopied the currency and directly provided it to Butterfield and Cameron before the buy took place, goes to the weight of the evidence, not its admissibility (*see People v Julian*, 41 NY2d 340, 344 [1977]; *People v Bellamy*, 34 AD3d 937, 939 [2006], *lv denied* 8 NY3d 843 [2007]).

Defendant's assertions that his cellular telephone should not have been admitted into evidence are equally unavailing. A warrant is not required to inspect defendant's personal effects, where, as here, they " 'are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial' " (*People v Natal*, 75 NY2d 379, 383 [1990], quoting *United States v Edwards*, 415 US 800, 807 [1974]). Furthermore, after being inventoried and observed by law enforcement officers incident to a lawful arrest, the cellular telephone was properly subpoenaed for use in grand jury proceedings, not as a discovery device, and the subpoena was properly made returnable before the grand jury (*see generally People v Natal*, 75 NY2d at 385).

We also find no merit to defendant's contentions with regard to the admissibility of the tape-recorded evidence (*see People v Ely*, 68 NY2d 520, 522 [1986]; *People v Rendon*, 273 AD2d 616, 618 [2000], *lv denied* 95 NY2d 968 [2000]). Nor do we find that County Court abused its discretion in making its *Sandoval* ruling. The record demonstrates that the court weighed appropriate considerations and balanced the prejudicial effect of defendant's prior convictions against their probative value on the issue of credibility (*see People v Hayes*, 97 NY2d 203, 208 [2002]; *People v Bennette*, 56 NY2d 142, 146 [1982]; *People v Sandoval*, 34 NY2d 371 [1974]).

We have considered defendant's remaining contentions and find them to be either unpreserved or without merit.

Peters, J.P., Rose, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed.