■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN RICHARDS, Appellant. [909 NYS2d 841]—

Stein, J. Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered May 8, 2009, upon a verdict convicting defendant of the crimes of rape in the second degree (eight counts) and criminal sexual act in the second degree (eight counts).

Defendant was charged in a 16-count indictment with eight counts of rape in the second degree and eight counts of criminal sexual act in the second degree for having sexual intercourse and/or oral and/or anal sex with a 14-year-old girl. Defendant's motion to suppress statements that he had made to police was denied following a *Huntley* hearing. After a jury trial, defendant was convicted of all 16 charges and was subsequently sentenced to concurrent prison terms of three years, followed by 10 years of postrelease supervision, for each count. Defendant now appeals and we affirm.

Defendant first contends that his convictions were based on legally insufficient evidence and were against the weight of the evidence. Preliminarily, we note that, although defendant's challenge to the sufficiency of the evidence is unpreserved for our review because he failed to make a particularized motion to dismiss or to set aside the verdict directed at the specific deficiencies in the proof that he now advances, we will nonetheless consider the sufficiency of the evidence as to each element of the crimes charged in the context of our weight of the evidence review (*see People v Vargas*, 72 AD3d 1114, 1116 [2010], *lv denied* 15 NY3d 758 [2010]; *People v Barringer*, 54 AD3d 442, 443 [2008], *lv denied* 11 NY3d 830 [2008]). In that regard, if we determine, based on all the credible evidence, that a different finding would not be unreasonable, we must evaluate the evidence in a neutral light and " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Hebert*, 68 AD3d 1530, 1531 [2009], *lv denied* 14 NY3d 841 [2010], quoting *People v Romero*, 7 NY3d 633, 643 [2006]), while according appropriate deference to the jury's credibility determinations (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Hebert*, 68 AD3d at 1531).

As relevant here, a person is guilty of the crime of rape in the second degree when, being 18 years old or older, "he or she engages in sexual intercourse with another person less than [15]

years old" (Penal Law § 130.30 [1]), and criminal sexual act in the second degree occurs when a person 18 years old or older "engages in oral sexual conduct or anal sexual conduct with another person less than [15] years old" (Penal Law § 130.45 [1]). It is undisputed that, at the time the crimes took place, defendant was 23 years old and the victim was 14 years old. The victim testified that, between April 24, 2008 and June 11, 2008, she went to defendant's apartment every week after school or stayed overnight on weekends and engaged in sexual intercourse and/or oral sex with defendant. Although she was not able to recall all of the specific dates on which she and defendant engaged in sexual activity, she did testify to some specific dates during the weeks in question. One of the specific dates on which the victim testified she had sex with defendant was June 11, 2008. She testified that, when she returned from school at approximately 5:00 P.M. that day, she and defendant engaged in sexual intercourse and anal sex at defendant's apartment.

Defendant's former roommate also testified that she witnessed defendant and the victim "act[ing] like a couple," that she overheard defendant and the victim talking about having had sexual intercourse and anal sex on one occasion and that she found a video file on a computer that defendant claimed depicted him and the victim having oral sex. In addition, the victim's mother testified that she allowed the victim to sleep over at defendant's apartment, usually on weekends, as she was led to believe that the victim was staying over with the roommate. The jury also heard from Kurt Conroy, a police officer who testified that defendant made various allegedly incriminating statements to him at the police station.* A transcript of an instant message conversation purportedly between defendant and the victim, wherein a person using defendant's screen name insinuates that he had sex and oral sex with the victim, was also admitted into evidence. In contrast, defendant testified that he never had sexual relations with the victim and that they were only friends. Specifically with regard to counts 15 and 16 (referring to sexual acts occurring on June 11, 2008), he testified that he spent the day at his mother's house and that he went straight to work from there. This testimony was corroborated by defendant's mother.

Defendant's challenge to the verdict as against the weight of

---

* The statements were: "She is mad at me because I am with someone else" (made in response to being informed of the allegations); "I never forced her" (made in response to Conroy indicating that the victim had alleged that defendant raped her); "What kind of time am I looking at? Statutory [r]ape is like one to three years. I cannot do time in jail and be away from my daughter"; and "If you are going to arrest me, then I want to cooperate."

the evidence is based on his contention that the victim and the roommate were incredible as witnesses for a variety of reasons. For example, he argues that the victim had a propensity to lie—as evidenced by her lying to her mother about who she was staying with at defendant's apartment—and that she had a motive to be dishonest about her relationship with him based on his allegedly declining to engage in a romantic relationship with her and becoming involved with someone else. In addition, the victim denied any knowledge of a prominent scar allegedly on defendant's penis. Similarly, defendant argues that the roommate was a scorned and jealous lover of his. All of these issues were addressed before the jury and the jury apparently credited the testimony of the People's witnesses over the testimony of defendant and his mother. Inasmuch as we find " 'nothing incredible or inherently unbelievable about [the] testimony [of these witnesses] . . . [we discern] no basis upon which to disturb the jury's credibility assessment[s], made after hearing [the witnesses'] testimony and observing [their] demeanor' " (*People v Lane*, 47 AD3d 1125, 1126 [2008], *lv denied* 10 NY3d 866 [2008], quoting *People v Weber*, 25 AD3d 919, 921 [2006], *lv denied* 6 NY3d 839 [2006]). Accordingly, we find that defendant's convictions were not against the weight of the evidence.

Defendant also argues that County Court should have suppressed the four statements he made to the police, as recounted by Conroy, because they were the product of custodial interrogation prior to receiving *Miranda* warnings. We disagree. In ascertaining whether defendant was in custody when the statements were made, we must look at the circumstances and determine "whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (*People v Paulman*, 5 NY3d 122, 129 [2005]; *see People v Baggett*, 57 AD3d 1093, 1094 [2008]).

Here, Conroy testified at a *Huntley* hearing that, after speaking with the victim and her mother, he went to defendant's apartment at approximately 10:30 P.M. to speak with defendant. When defendant requested that Conroy return in 15 minutes in order to give defendant time to shower, Conroy offered to meet him at the police station but defendant requested transportation. When Conroy returned, defendant accompanied him to the police station in an unmarked police car, sitting in the front seat without handcuffs. During the ride to the police station, Conroy advised defendant of the reason he wanted to speak with him. After arriving at the police station, defendant and Conroy spoke in an interview room. Defendant was not handcuffed at the time. Although Conroy acknowledged that he

was carrying his gun in a visible holster, he was not in uniform. He also testified that it was his usual practice to offer something to eat or drink to a person in an interview room, but did not have a specific recollection of making such an offer to defendant. Conroy denied defendant's allegations that he threatened him and testified that, during the approximately one hour time period from when Conroy arrived at defendant's apartment to the time of his arrest—after the statements at issue were made—defendant did not request that the questioning end, that he be permitted to contact an attorney or that he be allowed to leave. Based upon this evidence, County Court concluded that the questioning of defendant was investigatory rather than custodial and, accordingly, declined to suppress defendant's statements. Considering the length of time that passed and the circumstances as a whole and according deference to County Court's credibility determinations, we discern no error in its determination (*see People v Locke*, 25 AD3d 877, 878-879 [2006], *lv denied* 6 NY3d 835 [2006]; *People v Rivenburgh*, 1 AD3d 696, 698 [2003], *lv denied* 1 NY3d 579 [2003]).

We are also unpersuaded by defendant's contention that County Court erred in redacting a portion of defendant's exhibit A (a transcript of instant messages sent between the victim and defendant's sister) which referenced the victim's prior sexual conduct with another person. Upon reviewing the redacted statement in context, we find that County Court did not abuse its discretion in determining that it did not fall within any of the exceptions set forth in the rape shield statute (*see* CPL 60.42) and was not material to defendant's case or to the victim's credibility (*see People v Lane*, 47 AD3d at 1127-1128; *see also People v Williams*, 81 NY2d 303, 312-313 [1993]).

Defendant's argument that he was deprived of the effective assistance of counsel is similarly unconvincing. The record reveals that, considering the totality of the circumstances, defendant received meaningful representation (*see People v Jackson*, 70 NY2d 768, 769 [1987]; *People v Jackson*, 48 AD3d 891, 893 [2008], *lv denied* 10 NY3d 841 [2008]). Counsel for defendant made appropriate pretrial and posttrial motions, made various objections during trial, gave opening and closing statements and argued zealously for the admission of statements made by the victim regarding her prior sexual experience. Counsel's various errors or shortcomings claimed by defendant are either belied by the record or defendant has failed to " 'demonstrate the absence of strategic or other legitimate explanations' [therefor]" (*People v Baker*, 14 NY3d 266, 270-271 [2010], quoting *People v Rivera*, 71 NY2d 705, 709 [1988]), and any argu-

ment that alternate approaches would have substantially helped defendant's case are "speculative and reflect efforts to second-guess trial strategy" (*People v De Marco*, 33 AD3d 1045, 1046 [2006]).

We have examined defendant's remaining contentions, including that his sentence was harsh and excessive, and find them to be without merit.

Mercure, J.P., Rose, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment is affirmed.

