■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TAMMARA McCOY, Also Known as KESHA, Appellant. [933 NYS2d 425]—

Kavanagh, J.

On November 14, 2007, the City of Albany Police Department received a call that shots had been fired in the vicinity of 637 South Pearl Street in the City of Albany. Upon arriving at the scene, the police found the victim lying on the ground dead from an apparent gunshot wound. As they were securing the crime scene, the police were approached by defendant, who stated that the victim might be her estranged husband. Subsequently, after the police completed their investigation, defendant was arrested and charged with conspiring with one Jamar Johnson to murder her husband. An indictment was later filed, charging defendant with, among other crimes,[1] murder in the second degree and conspiracy in the second degree.[2] After a jury trial, defendant was convicted of these charges, and sentenced to an aggregate prison term of 25 years to life. Defendant now appeals.

There are three principal issues that have been raised by defendant in this appeal. The first is that statements she made on the night of her husband's death should have been suppressed and not admitted into evidence at her trial because she had been subjected to a custodial interrogation while at police headquarters before being advised of her constitutional rights.

---

**1.** Defendant was also charged with depraved indifference murder and manslaughter in the first and second degrees. At trial, Supreme Court dismissed the depraved indifference murder charge, and the parties agreed that the two manslaughter charges would not be submitted to the jury.

**2.** Johnson was also charged in the indictment and, after a separate trial, was convicted of murder in the second degree, conspiracy in the second degree and criminal possession of a weapon in the second and third degrees. This Court has affirmed that judgment of conviction (*People v Johnson*, 79 AD3d 1264 [2010], *lv denied* 16 NY3d 832 [2011]).

As a general rule, statements obtained by the police from a suspect who is in custody are only admissible if made after the individual has been advised of his or her constitutional rights, and has made a knowing and intelligent waiver of them (see People v Miller, 82 AD3d 1278, 1279 [2011], lv denied 16 NY3d 861 [2011]; People v Culver, 69 AD3d 976, 976-977 [2010]). A suspect's custodial status is a fact-driven determination that is largely dependent on the circumstances that existed when the statements were made and focuses on "the amount of time the person spent with the police, whether his or her freedom of action was significantly restricted, the location of the questioning and the atmosphere under which it was conducted, the person's degree of cooperation, whether he or she was apprised of his or her constitutional rights and whether the questioning was investigatory or accusatory in nature" (People v Hardy, 223 AD2d 839, 840 [1996]). The burden is on the People to prove beyond a reasonable doubt that the individual was not in custody before Miranda warnings were given (see People v Baggett, 57 AD3d 1093, 1094 [2008]), and the ultimate question to be answered is "whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" at the time he or she was being questioned (People v Paulman, 5 NY3d 122, 129 [2005]; see People v Lewis, 83 AD3d 1206, 1207-1208 [2011], lv denied 17 NY3d 797 [2011]; People v Baggett, 57 AD3d at 1094).

At the Huntley hearing, the People offered testimony from two police officers who stated that after arriving at the scene of the shooting, they were approached by defendant who told them that she believed her estranged husband may have been the victim of the shooting. As a result of this disclosure, defendant was asked, and agreed, to accompany the police to police headquarters. She arrived at police headquarters at approximately 11:45 P.M. and was escorted to a room, where she was interviewed by Detective Thomas Kubisch regarding her activities that evening and her contact with the victim prior to the shooting. At the outset of the interview, defendant consented to the police examining her cell phone and later permitted them to go and enter her apartment to retrieve a phone charger, as well as a photograph of a man with whom she claimed she had just ended a relationship.

As for her activities that evening, defendant told Kubisch that she had been with the victim and had returned with him in her car to her apartment complex just prior to the shooting to check on her three young children. Defendant stated that she left the victim in her car when she went to her apartment and, upon

her return, found that her husband was gone and the door to the car was open, after which time she had no contact with him. At no time during this initial interview—or when she was transported to police headquarters—was defendant handcuffed or restrained by the police, and she was never told that she was under arrest or that she could not leave police headquarters. In addition, defendant was often left alone in the interview room, offered food and drink throughout the evening while she was being questioned, allowed to use the bathroom and given access to a telephone.

Approximately three hours after defendant had arrived at police headquarters, Kubisch concluded that she had not been completely truthful about her activities that evening or her contact with her estranged husband and decided to advise defendant of her constitutional rights. He informed defendant of the *Miranda* warnings and defendant signed a form acknowledging that she understood her rights and was willing to waive them. Defendant continued to cooperate with the police in their ongoing investigation and ultimately told them that she was presently in a relationship with Johnson. She stated that Johnson, on a prior occasion, had threatened to kill her estranged husband and acknowledged being in telephone contact with Johnson throughout the evening while she was with the victim prior to the shooting. Defendant specifically recalled Johnson telling her during one of the phone calls to bring the victim to a certain location so that he could "pop him." Defendant admitted leaving her husband in the car outside her apartment, knowing that Johnson was in the area, but claimed that it had nothing to do with Johnson's request and, throughout her interviews with the police, she denied any complicity in her husband's murder. On these facts, we agree with Supreme Court that defendant was not in custody prior to being given her *Miranda* warnings and the statements she made to the police at police headquarters were properly admitted into evidence at trial (*see People v Richards*, 78 AD3d 1221, 1224-1225 [2010], *lv denied* 15 NY3d 955 [2010]; *People v Langlois*, 17 AD3d 772, 773-774 [2005]). As for defendant's claim that her cell phone and phone charger were illegally seized by the police, we note nothing in the record that would indicate that her consent to the seizure of these items was anything but voluntary.

Defendant also claims that her conviction for conspiracy in the second degree was against the weight of the credible evi-

dence introduced at trial.[3] In conducting a weight of the evidence review where a different verdict would not have been unreasonable, we "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Romero*, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]; *see People v Danielson*, 9 NY3d 342, 348 [2007]). Further "we accord great deference to the jury's conclusions regarding the credibility of the witnesses and the weight to be given their testimony" (*People v Scott*, 47 AD3d 1016, 1017 [2008], *lv denied* 10 NY3d 870 [2008] [internal quotation marks and citations omitted]).

Here, the charge of conspiracy in the second degree, as it pertains to defendant, required that it be proven at trial that she had entered into an agreement with Johnson to murder her husband and that an overt act was committed by her or Johnson to achieve that objective (*see* Penal Law §§ 105.15, 105.20). While defendant claims that she tried to dissuade Johnson from attacking her husband, the People presented credible evidence that, prior to the shooting, she had agreed to assist Johnson in his plan to kill her husband and played both an instrumental and indispensable role in carrying out this murder. In that regard, we again note that defendant was in contact with Johnson throughout the night of the murder, and phone records introduced into evidence at trial established that she spoke with Johnson by phone immediately before she left the victim alone in her car while it was parked outside her apartment and shortly after the shooting took place. Eyewitnesses testified to seeing defendant walking away from her car toward her apartment only moments before hearing gunshots, and then observing an unknown man with a gun in his hand chasing another man from where defendant's car had been parked. In addition, it is uncontroverted that defendant obtained a room for the victim at a local hotel several days prior to the shooting and was aware that the victim, when he arrived in Albany, was in possession of a large sum of money. It was also established at trial that on the day of the shooting, defendant had been at the victim's hotel and had gained access to his room while he was apparently not there. Later, after defendant was arrested, a significant amount of money belonging to the victim was found by the police in a

---

3. While defendant argues that this conviction was not based on legally sufficient evidence, this claim has not been preserved for our review because a motion to dismiss on this specific ground was not made at trial (*see People v Heaney*, 75 AD3d 836-837 [2010], *lv denied* 15 NY3d 852 [2010]; *People v Malcolm*, 74 AD3d 1483, 1484 n [2010], *lv denied* 15 NY3d 954 [2010]).

plastic bag secreted in a closet in defendant's apartment. Finally, Johnson, when apprehended, was found to have a substantial sum of money on his person and admitted to the police that he had, in fact, shot and killed the victim. This evidence, coupled with the significant inconsistencies that emerged during the course of the police investigation in the various statements that defendant made on the night of the murder, provided ample support for the jury's conclusion that she had conspired with Johnson to murder her estranged husband and was indeed guilty of conspiracy in the second degree.

Finally, we reject defendant's claim that the photographs retrieved from a cell phone found next to the victim's body were not properly authenticated and should not have been admitted into evidence at trial. "[W]here no witnesses are available who have viewed the subject matter portrayed, valid alternative grounds may exist for authenticating the photograph and admitting it into evidence, such as testimony, especially that by an expert, tending to establish that the photograph truly and accurately represents what was before the camera" (*People v Byrnes*, 33 NY2d 343, 349 [1974]). While the individual who took these photographs—presumably the victim—was not available to testify at trial, competent evidence was presented as to how the photographs were retrieved from the cell phone and how data in the phone, including the photographs, could not have been altered after the phone was recovered by the police near the victim's body at the scene of the shooting. Moreover, each photograph depicted large sums of money on a table similar to that located in the hotel room where the victim was staying, and each was date stamped November 13, 2007—one day prior to the shooting. We also note that there was no dispute at trial that the victim, at the time of his death, was in the possession of a large sum of money. As a result, any prejudice that may have resulted from the admission of these photographs into evidence at trial was harmless. Defendant's remaining contentions have been considered and have been found to be without merit.

Mercure, J.P., Malone Jr., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.