THIRD DEPARTMENT, MARCH, 2012

(March 1, 2012)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBISO C. MUNIZ, Appellant. [939 NYS2d 181]—

Peters, J. Appeals (1) from a judgment of the County Court of

Chemung County (Hayden, J.), rendered April 2, 2009, upon a verdict convicting defendant of the crimes of rape in the second degree, petit larceny and criminal mischief in the fourth degree, and (2) by permission, from an order of said court, entered November 9, 2009, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

On the morning of June 14, 2007, Virginia Candelaria called 911 reporting that she had arrived at her apartment in the City of Elmira, Chemung County to find the victim, her roommate's 13-year-old daughter, engaged in sexual intercourse with a man later identified as defendant, who was 37 years old at the time. Following a jury trial, defendant was convicted of rape in the second degree, petit larceny and criminal mischief in the fourth degree. County Court denied defendant's pro se motion to set aside the verdict and sentenced him, as a second felony offender, to $3^{1}/_{2}$ to 7 years in prison. After it was discovered that the sentence imposed on the rape count was illegal, defendant was resentenced to an aggregate term of seven years in prison followed by five years of postrelease supervision. Defendant's subsequent CPL 440.10 motion was denied without a hearing. He now appeals from the judgment of conviction and, by permission, from the order denying his CPL 440.10 motion.

We reject defendant's contention that the indictment must be dismissed because he appeared before the grand jury in shackles and prison garb. Although the requisite reasonable basis for the restraint was not articulated on the record, reversal is not required since the prosecutor's cautionary instructions to the grand jury were sufficient to dispel any potential prejudice (*see People v Crumpler*, 70 AD3d 1396, 1397 [2010], *lv denied* 14 NY3d 839 [2010]; *People v Pennick*, 2 AD3d 1427, 1428 [2003], *lv denied* 1 NY3d 632 [2004]; *People v Fells*, 279 AD2d 706, 708-709 [2001], *lv denied* 96 NY2d 758 [2001]; *People v Felder*, 201 AD2d 884, 885 [1994], *lv denied* 83 NY2d 871 [1994]). In addition, defendant's claim that the public servant who transported him from the jail to the grand jury proceeding was not administered an oath of secrecy (*see* CPL 190.25 [3] [e]) is belied by the record. Accordingly, County Court properly denied defendant's motion to dismiss the indictment on these grounds.

We are similarly unpersuaded by defendant's argument that the pretrial identification procedure used by the police was unduly suggestive. " 'A photo array is unduly suggestive if some characteristic of one picture draws the viewer's attention in such a way as to indicate that the police have made a particular selection' " (*People v Davis*, 18 AD3d 1016, 1018 [2005], *lv*

*denied* 5 NY3d 805 [2005], quoting *People v Yousef*, 8 AD3d 820, 821 [2004], *lv denied* 3 NY3d 743 [2004]). Here, the array depicts individuals of similar age, appearance and physical characteristics. The officer who prepared the array testified at the *Wade* hearing that Candelaria and the victim were showed the array at separate times and places, that each identified defendant as the perpetrator, and that no suggestions were made regarding which photo they should choose. Defendant's contention that his photo was taken at a slightly closer range than the others does not render the array unduly suggestive (*see People v Means*, 35 AD3d 975, 976 [2006], *lv denied* 8 NY3d 948 [2007]; *People v Brown*, 169 AD2d 934, 935 [1991], *lv denied* 77 NY2d 958 [1991]; *see also People v Lawal*, 73 AD3d 1287, 1288 [2010]). Nor do the discrepancies between the description provided by Candelaria and defendant's appearance require suppression (*see People v Hunter*, 32 AD3d 611, 613 [2006]). Thus, County Court properly denied defendant's motion to suppress the identifications.

Defendant's claim that the verdict was against the weight of the evidence is also without merit. The victim testified that she met defendant, who she identified in open court, when he offered her a ride as she was walking home. At his request, she gave him her home telephone number before he dropped her off at her apartment. Two days later, he called early in the morning and asked her if anyone was home; when she said no, he asked if he could come over, and the victim told him that he could. The victim explained that after defendant arrived they began kissing and eventually moved to the bedroom where defendant "put his penis in [her] vagina." While defendant highlights certain inconsistencies between the victim's in-court testimony and her out-of-court statements or other evidence in the record, and stresses the fact that she had been diagnosed with bipolar disorder and was hospitalized at the time of trial, these issues were fully explored at trial and do not render her testimony incredible as a matter of law (*see People v Shepherd*, 83 AD3d 1298, 1299 [2011], *lv denied* 17 NY3d 809 [2011]; *People v Stearns*, 72 AD3d 1214, 1216 [2010], *lv denied* 15 NY3d 778 [2010]; *People v Conklin*, 63 AD3d 1276, 1277 [2009], *lv denied* 13 NY3d 859 [2009]). Moreover, despite defendant's assertion to the contrary, corroboration of the victim's testimony was not required because her incapacity to consent was a product of her age (*see People v Carroll*, 95 NY2d 375, 383 [2000]; *People v Alford*, 287 AD2d 884, 886 [2001], *lv denied* 97 NY2d 750 [2002]; *People v Kelly*, 270 AD2d 511, 512 [2000], *lv denied* 95 NY2d 854 [2000]).

Aside from the victim's testimony, Candelaria testified that,

upon returning home at approximately 9:00 A.M. on the morning of the incident after working her overnight shift, she noticed that the downstairs front door was unlocked and the upstairs door to the apartment was ajar. Upon entering the inside of the apartment and hearing noise from the victim's room, she pushed the victim's door open and saw a man, whom she identified in court as defendant, having sex with the victim. Candelaria testified that defendant then frantically began getting dressed and, as she called 911 on her cordless telephone, defendant took the telephone from her hand, removed its battery and then pushed her away as he tried to leave. After he went down the stairs, Candelaria locked the apartment door but, unable to exit because the front door was locked, defendant came back up the stairs, pushed on the door until the lock and part of the door broke and came back into the apartment demanding that Candelaria unlock the door. Candelaria testified that she ultimately did so out of fear and that, as he was leaving, defendant took her cordless telephone with him. After defendant fled, Candelaria noticed white underwear, which she had seen defendant holding while he was attempting to exit the apartment, in a chair next to the victim's door. One of the responding officers identified the underwear as that which he recovered from the apartment on the morning of the incident, and DNA evidence established that seminal fluid on the underwear matched the DNA of defendant.

The People also presented telephone records indicating that three calls were placed from a telephone number associated with defendant's girlfriend to the victim's home before 9:00 A.M. on the morning of the incident. The evidence further established that defendant would have had enough time to commit the crime and travel to the supermarket—located just over a mile from the victim's apartment—where he was captured on video surveillance at 9:22 A.M. Telephone records, surveillance video and testimony also indicated that a call was placed to the victim's apartment from a pay telephone located outside the supermarket on June 14, 2007 at 11:24 A.M., which was consistent with Candelaria's testimony that, about an hour and a half after the incident, defendant called the apartment and, believing that she was the victim, asked in Spanish "how was everything."

Although defendant denied ever having sexual contact with the victim and presented a detailed alibi defense, this created credibility issues that the jury was entitled to, and obviously did, resolve against him (*see People v Stephens*, 2 AD3d 888, 889 [2003], *lv denied* 2 NY3d 746 [2004]; *People v Jones*, 283 AD2d 665, 668 [2001], *lv denied* 96 NY2d 903 [2001]; *People v Johnson*,

268 AD2d 891, 894 [2000], *lv denied* 94 NY2d 921 [2000]). The discrepancies between the witnesses' physical description of the perpetrator and the underwear found in the victim's apartment similarly raised issues of credibility for the jury and did not compel crediting defendant's misidentification or alibi defenses given the other strong evidence establishing his identity (*see People v Johnson*, 91 AD3d 1194, 1196 [2012]; *People v Colon*, 24 AD3d 1114, 1115 [2005], *lv denied* 6 NY3d 811 [2006]; *People v Mills*, 20 AD3d 779, 781 [2005]). According due deference to the jury's credibility determinations and viewing the evidence in a neutral light (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Hull*, 71 AD3d 1336, 1338 [2010]), we find the verdict to be amply supported by the weight of the evidence.

We discern no abuse of discretion in County Court's *Sandoval* ruling, which took into account all relevant factors and struck an appropriate balance between the probative value of defendant's prior convictions and the risk of unfair prejudice to him (*see People v Peele*, 73 AD3d 1219, 1220 [2010], *lv denied* 15 NY3d 894 [2010]; *People v Mitchell*, 57 AD3d 1308, 1311 [2008]; *People v Brown*, 52 AD3d 943, 947 [2008], *lv denied* 11 NY3d 735 [2008]). The court precluded any inquiry into defendant's 1993 conviction for attempted criminal possession of a controlled substance in the third degree, his 1994 conviction for assault in the second degree and his 1995 conviction for criminal mischief, but permitted the People to cross-examine defendant regarding his 1996 and 2000 felony convictions for criminal sale of a controlled substance in the fifth degree. As County Court correctly concluded, each of these convictions was indicative of defendant's willingness to place his own interests above the interests of society and, thus, relevant to his credibility (*see People v Grady*, 40 AD3d 1368, 1370 [2007], *lv denied* 9 NY3d 923 [2007]; *People v Richins*, 29 AD3d 1170, 1172 [2006], *lv denied* 7 NY3d 817 [2006]; *People v Porter*, 304 AD2d 845, 847 [2003], *lv denied* 100 NY2d 565 [2003]).

Despite the litany of errors asserted by defendant, we find that he received meaningful representation. Some of defendant's arguments pertain to matters outside the present record, which cannot be raised on direct appeal and were not raised in his CPL article 440 motion (*see People v Shaver*, 86 AD3d 800, 802 [2011]; *People v Clinkscales*, 83 AD3d 1109, 1110 [2011], *lv denied* 17 NY3d 815 [2011]). While counsel failed to timely register an objection to defendant's appearance before the grand jury, we perceive no prejudicial error under the circumstances (*see People v Porter*, 82 AD3d 1412, 1416 [2011], *lv denied* 16 NY3d 898 [2011]). The remaining claimed errors or shortcom-

ings on the part of counsel are either belied by the record, constitute mere disagreements with the defense or trial strategy, or have not been shown to be without any strategic or other legitimate explanation (*see People v Shaver*, 86 AD3d at 802; *People v Porter*, 82 AD3d at 1415-1416; *People v Richards*, 78 AD3d 1221, 1225-1226 [2010], *lv denied* 15 NY3d 955 [2010]). Faced with substantial testimonial and physical evidence implicating defendant, the various counsel who represented him effectively advocated for him and mounted a strong defense to the charges by filing numerous pretrial motions, raising relevant objections, aggressively seeking to exclude evidence that counsel viewed as prejudicial, competently cross-examining the People's witnesses, presenting a cogent alibi defense and making relevant arguments before the jury. Viewing the evidence, the law and the circumstances of the case in totality, we find that defendant was not deprived of effective assistance (*see People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Young*, 86 AD3d 796, 799 [2011], *lv denied* 17 NY3d 905 [2011]).

Defendant's remaining contentions do not require extended discussion. The majority of the alleged instances that defendant asserts constituted prosecutorial misconduct were not preserved for our review (*see People v Williams*, 8 NY3d 854, 855 [2007]) and, in any event, any such conduct was not so egregious or pervasive as to deprive defendant of a fair trial (*see People v Dickson*, 58 AD3d 1016, 1018 [2009], *lv denied* 12 NY3d 852 [2009]; *People v Adams*, 39 AD3d 1081, 1083 [2007], *lv denied* 9 NY3d 872 [2007]). Next, defendant was afforded a meaningful opportunity to use the material provided by the People on the eve of trial and, thus, his claim that he was denied a fair trial due to the People's untimely disclosure of this alleged *Brady* and/or *Rosario* evidence is unpersuasive (*see People v Cortijo*, 70 NY2d 868, 869-870 [1987]; *People v Newland*, 83 AD3d 1202, 1204 [2011], *lv denied* 17 NY3d 798 [2011]; *People v Burroughs*, 64 AD3d 894, 898 [2009], *lv denied* 13 NY3d 794 [2009]). As for his claim that the sentence was harsh and excessive, given the nature of the crimes committed and defendant's extensive criminal history, which includes several felony convictions, and considering the measure of leniency he received by County Court's discretionary decision to treat him as a second felony offender, rather than a persistent felony offender, we find no clear abuse of discretion nor extraordinary circumstances warranting modification of the sentence (*see People v Lockhart*, 12 AD3d 842, 845 [2004], *lv denied* 4 NY3d 800 [2005]; *People v Rivera*, 268 AD2d 674, 674 [2000], *lv denied* 94 NY2d 952 [2000]; *People v Johnson*, 235 AD2d 574, 574 [1997], *lv denied* 89 NY2d 1036 [1997]). Finally, we have reviewed the arguments raised in de-

fendant's pro se submission and, to the extent not specifically addressed herein, we find them to be lacking in merit.

Mercure, A.P.J., Rose, Lahtinen and Garry, JJ., concur. Ordered that the judgment and order are affirmed.