(July 27, 2017)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAURICE ANTHONY, Also Known as M.O., Appellant. [61 NYS3d 151]—

Egan Jr., J. Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered May 9, 2014, upon a verdict convicting defendant of the crimes of murder in the first degree, murder in the second degree and attempted robbery in the first degree (two counts).

On the afternoon of December 19, 2010, the victim and his cousin picked up defendant in the victim's silver sport utility vehicle (hereinafter SUV) for the purpose of completing a sale of marihuana. During the course of that transaction, the victim rejected defendant's invitation to become a member of the Bloods gang. Shortly after the victim parked the SUV to complete the sale, defendant demanded that the victim turn over all of his marihuana and money. When the victim did not respond, the victim's cousin heard "a gun cock back," and defendant struck the victim's face with a handgun. After the victim and defendant exited the SUV, defendant fired two gunshots near the rear of the SUV. The victim returned to the driver's seat and placed the SUV in drive; however, defendant fired two more gunshots in the direction of the SUV, shattering the back window, and the SUV subsequently crashed into nearby parking meters. The victim died shortly thereafter from a gunshot wound.

The victim's cousin identified the shooter as the same male whom she had observed, two days prior, buy $20 of marihuana from the victim and receive a ride to a local Xtra Mart, which was captured by the store's surveillance video. Additionally, the police retrieved a Boost mobile phone from the back seat of the victim's vehicle—bearing defendant's fingerprint and containing personal photographs and videos of defendant. Defendant subsequently was indicted and, following a jury trial, convicted of murder in the first degree, murder in the second degree and two counts of attempted robbery in the first degree. County Court thereafter imposed concurrent prison terms of life without the possibility of parole for the conviction of murder in the first degree, 25 years to life for the conviction of murder in the second degree and 15 years for each of the two attempted robbery convictions. Defendant now appeals.

Initially, we find no error in County Court's ruling that, with respect to juror No. 17, defense counsel failed to articulate a prima facie case of purposeful discrimination as required for a *Batson* challenge. "Under the well-established *Batson* framework, an objecting party bears the burden of establishing on a prima facie basis that the challenge was exercised on the basis of the juror's race; only if this initial burden is satisfied does the burden then shift to the nonmoving party to provide a race-

neutral explanation for the removal of the prospective juror" (*People v Morris*, 140 AD3d 1472, 1475-1476 [2016] [citations omitted], *lv denied* 28 NY3d 1074 [2016]; *see Batson v Kentucky*, 476 US 79, 96-98 [1986]; *People v Green*, 141 AD3d 1036, 1038-1039 [2016], *lv denied* 28 NY3d 1072 [2016]; *People v Jones*, 136 AD3d 1153, 1157-1158 [2016], *lv dismissed* 27 NY3d 1000 [2016]). In order for the moving party to satisfy its burden at step one, it must "show[ ] that the facts and circumstances of the voir dire raise an inference that the other party excused one or more jurors for an impermissible reason" (*People v Henderson*, 305 AD2d 940, 940 [2003] [internal quotation marks and citations omitted], *lv denied* 100 NY2d 582 [2003]; *see People v Skervin*, 13 AD3d 661, 662 [2004], *lv denied* 5 NY3d 833 [2005]). A defendant "need not show a pattern of discrimination" (*People v Jones*, 136 AD3d at 1159); rather, he or she may demonstrate the requisite facts and circumstances by showing that "members of the cognizable group were excluded while others with the same relevant characteristics were not" or that the People excluded members of the cognizable group "who, because of their background and experience, might otherwise be expected to be favorably disposed to the prosecution" (*People v Childress*, 81 NY2d 263, 267 [1993]; *see e.g. People v Jones*, 136 AD3d at 1158).

Following the first round of jury selection and after County Court denied their challenge for cause, the People exercised a peremptory challenge of juror No. 17 based on the juror's initial admission that his two previous marihuana-related arrests could make it difficult for him to serve. In response, defendant raised a *Batson* objection, claiming that the People's use of a peremptory challenge demonstrated purposeful discrimination as juror No. 17, the only African American in the first jury pool, ultimately stated that he could be fair and impartial. As defendant failed to articulate any other facts or relevant circumstances to establish a prima facie case of discrimination, the burden did not shift to the People to offer a facially neutral explanation for the challenge (*see People v Hunt*, 50 AD3d 1246, 1247 [2008], *lv denied* 11 NY3d 789 [2008]; *People v Pryor*, 14 AD3d 723, 724-725 [2005], *lv denied* 6 NY3d 779 [2006]; *People v Williams*, 306 AD2d 691, 691 [2003], *lv denied* 1 NY3d 582 [2003]). Accordingly, we find that the court properly denied defendant's *Batson* challenge (*see People v Jenkins*, 84 NY2d 1001, 1003 [1994]).

Defendant also challenges several of County Court's pretrial rulings, including the court's decision to allow testimony related to defendant's alleged Bloods gang membership. "Gener-

ally speaking, evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized *Molineux* exceptions—motive, intent, absence of mistake, common plan or scheme and identity—or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (*People v Burnell*, 89 AD3d 1118, 1120 [2011] [internal quotation marks, brackets and citations omitted], *lv denied* 18 NY3d 922 [2012]; *see People v Womack*, 143 AD3d 1171, 1173 [2016], *lv denied* 28 NY3d 1151 [2017]). Here, defendant's purported gang membership fell within several *Molineux* exceptions, including placing the testimony regarding defendant's earlier attempt to recruit the victim in context and establishing defendant's motive for the shooting (*see People v Johnson*, 106 AD3d 1272, 1274 [2013], *lv denied* 21 NY3d 1043 [2013]; *People v Williams*, 28 AD3d 1005, 1008 [2006], *lv denied* 7 NY3d 819 [2006]). We further conclude that the probative value of defendant's purported gang membership outweighed its prejudicial effect and note that the court "mitigated any undue prejudice by providing limiting instructions" (*People v McCommons*, 143 AD3d 1150, 1154 [2016], *lv denied* 29 NY3d 999 [2017]; *see People v Davis*, 144 AD3d 1188, 1189-1190 [2016], *lv denied* 28 NY3d 1144 [2017]). Accordingly, we discern no error in the admission of the proffered evidence.

We reach a similar conclusion in rejecting defendant's assertion that County Court abused its discretion in fashioning its *Sandoval* compromise, as our review of the record reveals that the court properly balanced defendant's right to a fair trial against the People's right to impeach defendant's credibility based upon two of his prior 2004 convictions—had he elected to testify (*see People v Sandoval*, 34 NY2d 371, 374 [1974]; *People v Bateman*, 124 AD3d 983, 985 [2015], *lv denied* 25 NY3d 949 [2015]).[1] Contrary to defendant's contentions, remoteness in time does not automatically necessitate preclusion of prior convictions (*see People v Martin*, 136 AD3d 1218, 1219 [2016], *lv denied* 28 NY3d 972 [2016]; *People v Wilson*, 78 AD3d 1213, 1215 [2010], *lv denied* 16 NY3d 747 [2011]). Here, County Court limited any potential prejudice by restricting the scope of inquiry to only the date, title of the crime and conviction, while excluding the underlying facts—specifically, that defendant committed forgery in the second degree while he was processed for arrest and false personation during the execution of an ar-

---

1. Defendant did not object to the compromise rulings regarding his convictions in 2005, 2006 and 2007, nor does he challenge any of these *Sandoval* rulings on appeal.

rest warrant. In light of the restrictions placed upon the use of the 2004 convictions, we remain unpersuaded that the court abused its discretion (*see People v Ramos*, 133 AD3d 904, 908 [2015], *lv denied* 26 NY3d 1149 [2016]; *People v Alnutt*, 101 AD3d 1461, 1463-1464 [2012], *lv denied* 21 NY3d 941 [2013], *cert denied* 571 US —, 134 S Ct 1035 [2014]).

Nor are we persuaded by defendant's contention that County Court erred in refusing to suppress inculpatory statements that he made to two officers from the Village of Johnson City Police Department while he was incarcerated in Pennsylvania on an unrelated drug charge.[2] Defendant contends that his right to counsel was violated because the police failed to make a reasonable inquiry with respect to his representational status for his outstanding parole violation in New York. However, "the issuance of a parole violation warrant does not constitute the commencement of a criminal proceeding to which the indelible right to counsel attaches" (*People v Baxter*, 140 AD3d 1180, 1181 [2016], *lv denied* 29 NY3d 946 [2017]; *see People v Pelkey*, 294 AD2d 669, 670 [2002], *lv denied* 98 NY2d 771 [2002]; *cf. People v Frankos*, 110 AD2d 713, 713 [1985]). Additionally, the police confirmed that no charges had yet been filed in the instant matter, and a valid written *Miranda* waiver was secured from defendant before questioning commenced. As such, we find that it was permissible for the police to question defendant with respect to the underlying crimes for which he had not yet been charged (*see People v Guzman*, 147 AD3d 1450, 1451-1452 [2017], *lv denied* 29 NY3d 1032 [2017]; *People v Hooks*, 71 AD3d 1184, 1185 [2010]; *People v Ferringer*, 120 AD2d 101, 106-107 [1986]).

We next address defendant's assertion that County Court should have suppressed the evidence of his pretrial lineup identification by the victim's cousin on the ground that it was tainted by her prior viewings of still photographs created from the Xtra Mart surveillance video. On the night of the shooting, December 19, 2010, the victim's cousin informed police that the shooter was the same male whom she and the victim drove to the Xtra Mart two days earlier; however, the morning after the shooting, she was unable to select defendant out of a photo array. On September 24, 2011, during a police interview, and thereafter, on February 12, 2012, during her grand jury testimony, the victim's cousin was presented with still photo-

---

2. Defendant concedes that County Court was correct in finding that the police made reasonable inquiries concerning his representational status with respect to the Pennsylvania drug charge. As such, defendant acknowledges that his right to counsel did not attach "by virtue" of the Pennsylvania charge.

graphs from the surveillance video and identified the male in the photographs as both the same individual whom she met two days prior to the shooting during the drive to the Xtra Mart and as the shooter. Here, the victim's cousin was simply ratifying the events that occurred two days prior to the shooting as revealed in the surveillance stills, without identifying any known individual as the shooter. As such, we are satisfied that, notwithstanding the failure of the victim's cousin to select defendant from the photo array, there was an independent basis for the identification due to her proximity to defendant during both encounters. Additionally, the credibility of the identification was fully explored during cross-examination at trial (*see People v Choi*, 137 AD3d 808, 808 [2016], *lv denied* 27 NY3d 1130 [2016]; *People v Smith*, 122 AD3d 1162, 1164 [2014]; *People v Staccio*, 187 AD2d 755, 756 [1992]).

Defendant's remaining arguments, including those raised in his pro se brief, do not warrant extended discussion. Defendant's challenge to the legal sufficiency of the evidence "is unpreserved for our review inasmuch as he presented evidence after his unsuccessful motion to dismiss and failed to renew that motion at the close of all proof" (*People v Chirse*, 146 AD3d 1031, 1032 [2017] [internal quotation marks and citations omitted], *lv denied* 29 NY3d 947 [2017]; *see People v Lane*, 7 NY3d 888, 889 [2006]; *People v Race*, 78 AD3d 1217, 1219 [2010], *lv denied* 16 NY3d 835 [2011]). To the extent that defendant now challenges the honesty of the People's witnesses with respect to his identity as the perpetrator of these crimes, such credibility issues were fully explored at trial during cross-examination and, upon a review of the record, there is no reason for us to disturb the jury's resolution of those issues (*see People v Tunstall*, 149 AD3d 1249, 1252 [2017]; *People v Callicut*, 101 AD3d 1256, 1259-1260 [2012], *lv denied* 20 NY3d 1096 [2013]).

As to defendant's claim of ineffective assistance of counsel, "[t]he test is reasonable competence, not perfect representation, and so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (*People v Kalina*, 149 AD3d 1264, 1267 [2017] [internal quotation marks, brackets and citations omitted]; *see People v Criss*, 151 AD3d 1275, 1280 [2017]). Here, defense counsel engaged in appropriate pretrial motion practice, participated in *Wade, Sandoval* and *Huntley* hearings, made cogent opening and closing statements, cross-examined the

People's witnesses and advanced a plausible defense—namely, that the identification procedures and witnesses were incredible. As such, the record reflects that defendant received meaningful representation (*see People v Thorpe*, 141 AD3d 927, 935 [2016], *lv denied* 28 NY3d 1031 [2016]; *People v Griffin*, 128 AD3d 1218, 1220 [2015], *lv denied* 27 NY3d 998 [2016]). Finally, in view of defendant's criminal history and the nature of his present crimes, for which he expressed no remorse,[3] we reject his claim that County Court's imposition of the maximum sentence was harsh and excessive (*see People v Burnell*, 89 AD3d at 1122; *People v Hansen*, 290 AD2d 47, 57 [2002], *affd* 99 NY2d 339 [2003]). Defendant's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Lynch, Devine, Clark and Aarons, JJ., concur. Ordered that the judgment is affirmed.

---

**3.** "I don't even care. I don't have no remorse. Nobody have no remorse for my life."