People v Young (2021 NY Slip Op 00206)





People v Young


2021 NY Slip Op 00206


Decided on January 14, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 14, 2021

108101 109333 110388

[*1]The People of the State of New York, Respondent,
v
Sylvester Young, Also Known as Rick, Eric S. Young,Slick and Jerome Young, Appellant.

Calendar Date: December 16, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Reynolds Fitzgerald, JJ.


Theodore J. Stein, Woodstock, for appellant, and appellant pro se.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Egan Jr., J.
Appeals (1) from a judgment of the County Court of Schenectady County (Murphy III, J.), rendered November 16, 2015, upon a verdict convicting defendant of the crimes of murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree (four counts), criminal possession of a weapon in the third degree (two counts) and tampering with physical evidence (two counts), (2) by permission, from an order of said court, entered March 31, 2017, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing, and (3) by permission, from an order of said court (Sira, J.), entered May 16, 2018, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
At approximately 4:50 a.m. on January 25, 2009, police responded to a 911 call of a reported shooting at an unlicensed after-hours bar, formerly known as the Tip Toe Inn, located in the City of Schenectady, Schenectady County. Upon arrival, police encountered Delesia Davidson, standing outside the bar with a gunshot wound to her back, and Jumez Lee, also known as Holiday, lying inside the bar with a gunshot wound to his head. Both victims were transported to the hospital; Davidson recovered from her wounds, but Lee was pronounced dead later that day. Four days later, defendant was arrested on unrelated drug charges and, as part of that investigation, police questioned him regarding the subject shooting, but he denied any involvement.[FN1] In November 2009, a grand jury was convened with respect to the shooting but, in June 2012, County Court (Drago, J.) granted the People's application to withdraw the case from the grand jury and re-present it to a second grand jury (see CPL 190.75 [3]). The People thereafter re-presented the case to a second grand jury and, in April 2014, defendant was charged in a 10-count indictment with murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree (four counts), criminal possession of a weapon in the third degree (two counts) and tampering with physical evidence (two counts).
Following a seven-week jury trial in 2015, defendant was convicted as charged. He was thereafter sentenced, as a persistent felony offender, to an aggregate prison term of 90 years to life. Defendant moved to vacate the judgment of conviction pursuant to CPL 440.10 and, following a hearing, in March 2017, County Court (Murphy III, J.) denied defendant's motion finding, among other things, that the People's investigation and resulting preindictment delay did not deny defendant his constitutional due process rights or his constitutional right to a speedy trial. Defendant subsequently filed a second CPL 440.10 motion seeking to vacate his judgment of conviction and, in May 2018, County Court (Sira, J.) denied the motion, without a hearing. Defendant appeals from the judgment of conviction and, by permission, [*2]from the orders denying his postjudgment motions.[FN2]
Defendant contends that the integrity of the grand jury process was impaired as the People abandoned its presentation of the case to a first grand jury and impermissibly re-presented it to a second grand jury without obtaining court authorization (see CPL 190.75 [3]). Pursuant to CPL 190.75 (3), the People may not re-present charges — that have either been previously dismissed or withdrawn from the grand jury in such a manner as to constitute a de facto dismissal — to another grand jury unless the court authorizes such re-submission (see People v Davis, 17 NY3d 633, 637 [2011]). The People presented the case to the first grand jury on November 6, 2009, presenting the testimony of three witnesses. The People thereafter continued to investigate the case and no additional evidence was presented to the first grand jury. On June 5, 2012, the People submitted an application seeking court authorization (see CPL 190.75 [3]) to withdraw from the first grand jury and re-present to a second grand jury on the ground that they had "acquired substantial new evidence not available . . . at the time of the partial presentation to the first grand jury." County Court (Drago, J.) granted the People's application determining that the People's withdrawal from the first grand jury did not constitute a dismissal and that, even if it did, the People had acquired new evidence not previously available to them such that re-presentation to a second jury was appropriate. Thus, contrary to defendant's assertion, the People did, in fact, seek court authorization prior to re-presenting the case to the second grand jury. There being no indication that the People made said application "in anything other than good faith," we discern no error of law in this regard (People v Ballowe, 173 AD3d 1666, 1668 [2019] [internal quotation marks and citations omitted]; see CPL 190.75 [3]).
Defendant next contends that the jury's verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Defendant failed to preserve his challenge to the legal sufficiency of the evidence, however, as he failed to renew his motion for a trial order of dismissal after resting his case (see People v Kolupa, 13 NY3d 786, 787 [2009]; People v Saunders, 176 AD3d 1384, 1385 [2019], lv denied 35 NY3d 973 [2020]). Nevertheless, inasmuch as defendant has challenged the jury verdict as being against the weight of the evidence, we will necessarily determine as part of said review whether all of the elements of the charged crimes were proven at trial beyond a reasonable doubt (see People v Trappler, 173 AD3d 1334, 1335 [2019], lv denied 34 NY3d 985 [2019], cert denied ___ US ___, 140 S Ct 1281 [2020]). To that end, "[w]hen undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative [*3]probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Vandenburg, ___ AD3d ___, ___, 2020 NY Slip Op 07434, *1 [2020] [internal quotation marks, brackets and citations omitted]).
As relevant here, to be found guilty of murder in the second degree (count 1), the People were required to prove that, "[w]ith intent to cause the death of another person, [the defendant] cause[d] the death of such person or of a third person" (Penal Law § 125.25 [1]). To be found guilty of assault in the first degree (count 2), the People were required to prove that, "[w]ith intent to cause serious physical injury to another person, [the defendant] cause[d] such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). With respect to counts 3 and 4, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . with intent to use the same unlawfully against another, such person . . . possesses a loaded firearm" (Penal Law § 265.03 [1] [b]). With respect to counts 5 and 6, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" outside of his or her home or place of business (Penal Law § 265.03 [3]). With respect to counts 7 and 8, "[a] person is guilty of criminal possession of a weapon in the third degree when . . . such person commits the crime of criminal possession of a weapon in the fourth degree . . . and has been previously convicted of any crime" (Penal Law § 265.02 [1]).[FN3] Finally, with respect to counts 9 and 10, "[a] person is guilty of tampering with physical evidence when . . . [b]elieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he [or she] suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person" (Penal Law § 215.40 [2]).
The evidence at trial established that, in 2005, defendant was living in Schenectady selling drugs. In June of that year, defendant was with his friend and fellow gang member, Carl Henley, also known as Boone, when Henley was shot and wounded in Schenectady. Following the shooting, defendant indicated that he intended to seek revenge against Lee, who he blamed for the shooting. Approximately three months later, defendant was the passenger in a vehicle that was stopped for a Vehicle and Traffic Law violation during the course of which he fled the police, dropping a .38 Smith & Wesson handgun out of his pant leg. He was later arrested and admitted that he obtained the weapon "because he had a problem with a guy in Schenectady." He subsequently pleaded guilty to attempted criminal possession of a weapon [*4]in the third degree and served two years in prison. Following his release, defendant resumed selling drugs in Schenectady and obtained two .45 caliber pistols.
At approximately 3:20 a.m. on the day of the shooting, defendant arrived at the former Tip Toe Inn with one of his friends, Lisa Medina. Defendant was armed with two .45 caliber pistols but, upon learning that male patrons entering the bar were being searched for weapons, he passed the guns to Medina who hid them in her waistband. Once inside, Medina sat on defendant's lap and defendant retrieved the pistols. After defendant observed Lee in the bar and Medina confirmed his identity, defendant approached Lee, grabbed him by the collar and shot him in the back of the head. The bullet traveled through Lee's skull, exited through his left cheek, struck Davidson in the back, traveled through her chest and came to rest in her bra. Defendant fled the bar through a side door, dropped one of the .45 caliber pistols in the bar's parking lot and drove back to Medina's apartment. Once there, he met up with a friend who had also been at the bar with him, borrowed some clothes to change into and bagged up the clothes that he had been wearing. He then took his remaining pistol, placed it into his friend's toolbox and subsequently told him to dispose of it. Defendant then had Medina call Henley "to tell him the job was done." Defendant later told his friends that he had "popped the guy that shot [Henley]" and reenacted the shooting. Defendant also boasted about killing a member of a rival gang to two inmates while he was incarcerated on the drug charges.
Upon investigation, police discovered a single expended .45 caliber shell casing a few feet from where Lee's body had fallen and the bullet retrieved from Davidson's bra at the hospital was determined to be a .45 caliber. Police also located a .45 caliber cartridge under the mattress of defendant's bed. Laboratory testing determined that the pistol retrieved from the bar's parking lot was loaded, operational and contained defendant's DNA, but was not the gun from which the shot that killed Lee and wounded Davidson was fired. The murder weapon was never found.
Based on the foregoing, although a different verdict would not have been unreasonable, viewing the evidence in a neutral light, we find that there is ample proof in the record demonstrating that defendant possessed two .45 caliber pistols, shot and killed Lee with the requisite intent to kill, shot and wounded Davidson and tampered with physical evidence after he fled the scene of the crime (see People v Demellier, 174 AD3d 1120, 1122-1123 [2019], lv denied 34 NY3d 980 [2019]). To the extent that defendant contends that the witnesses who implicated him were not credible given that they had motivation to fabricate their stories, these credibility issues were fully explored at trial, were subject to cross-examination and posed credibility questions for the jury to resolve (see People [*5]v Smith, 174 AD3d 1039, 1042-1043 [2019], lvs denied 35 NY3d 1093, 1095, 1097 [2020]; People v Criss, 151 AD3d 1275, 1279 [2017], lv denied 30 NY3d 979 [2017]). Accordingly, giving deference to the jury's credibility determinations, we find that the jury gave the evidence the appropriate weight that it deserved, and we conclude that defendant's convictions on all counts are supported by the weight of the evidence (see People v White-Span, 182 AD3d 909, 913-914 [2020], lv denied 35 NY3d 1071 [2020]).
We find unavailing defendant's contention that he was denied his right to a fair trial as a result of the Molineux ruling issued by County Court (Murphy III, J.). "Although evidence of prior uncharged crimes or bad acts may never be presented for the sole purpose of establishing a defendant's criminal propensity or bad character" (People v Gannon, 174 AD3d 1054, 1058 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 980 [2019]), such evidence "may be admitted where [it] fall[s] within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Anthony, 152 AD3d 1048, 1051 [2017] [internal quotation marks and citations omitted], lvs denied 30 NY3d 978, 981 [2017]; see People v Ball, 154 AD3d 1060, 1064 [2017]).
Here, the evidence regarding defendant's gang affiliation, his use of aliases, his acquisition and possession of weapons and his prior drug sales and incarceration was inextricably interwoven with the subject crimes for which he was charged, as this evidence provided necessary background information regarding the nature of defendant's relationships with key witnesses and the victims. Said evidence explained not only how defendant knew Lee, but was relevant and material to establishing several Molineux exceptions, including defendant's identity as the shooter and his motive for the killing, and provided context for those activities that occurred both before and after the shooting (see People v Davis, 144 AD3d 1188, 1189-1190 [2016], lvs denied 28 NY3d 1144, 1150 [2017]; People v Johnson, 106 AD3d 1272, 1274 [2013], lvs denied 21 NY3d 1043, 1045, 1046 [2013]). County Court appropriately ruled that the probative value of such evidence outweighed the potential for undue prejudice and, although the court did not provide a limiting instruction each and every time evidence of defendant's bad acts were referenced, we are satisfied that any resulting prejudice was adequately minimized based on the court's issuance of periodic limiting instructions throughout trial, as well as during its final instructions to the jury (see People v Bailey, 32 NY3d 70, 83-84 [2018]; People v Hilts, 187 AD3d 1408, 1414-1415 [2020]).
Turning to defendant's first CPL 440.10 motion, we are unpersuaded that the five-year preindictment delay between the [*6]January 2009 commission of the subject crimes and defendant's April 2014 indictment deprived him of his constitutional rights to due process and a speedy trial. It is well settled that "an unreasonable delay in prosecuting a defendant constitutes a denial of due process and that an unjustifiable delay in commencing prosecution may require dismissal even though no actual prejudice to the defendant is shown" (People v Morris, 25 AD3d 915, 916 [2006] [internal quotation marks and citation omitted], lvs denied 6 NY3d 851, 853 [2006]; see People v Decker, 13 NY3d 12, 14 [2009]; People v Singer, 44 NY2d 241, 253-254 [1978]). The factors to be considered in determining the reasonableness of the delay include not only the extent of the delay, but the reason for the delay, the nature of the underlying charges, any extended period of pretrial incarceration and any prejudice or impairment of the defense attributable to the delay (see People v Heimroth, 181 AD3d 967, 969-970 [2020], lv denied 35 NY3d 1027 [2020]). "Where, as here, the delay is protracted, the burden is on the People to establish good cause" (People v Rogers, 157 AD3d 1001, 1004 [2018] [citations omitted], lv denied 30 NY3d 1119 [2018]; see People v Decker, 13 NY3d at 14; People v Montague, 130 AD3d 1100, 1101 [2015], lv denied 26 NY3d 1090 [2015]).
Although the five-year preindictment delay at issue was lengthy, the evidence at the CPL article 440 hearing established that the People had a good faith basis justifying the delay in prosecution as they were confronted with numerous uncooperative witnesses, conflicting accounts of how the shooting occurred and complex DNA profiles on the pistol that was retrieved from the bar's parking lot. The charges that defendant was facing were serious, including 10 felonies, with a top charge of murder in the second degree. Defendant, meanwhile, was already incarcerated on unrelated felony drug charges during this time period and, therefore, his liberty interest was not affected, and he failed to demonstrate how his defense was otherwise prejudiced or impaired as a result of the delay. Based on the foregoing, we find that defendant was not denied his constitutional rights to due process or a speedy trial. His related claim that he was denied the effective assistance of counsel based on the failure of his trial counsel to file a pretrial motion to dismiss based upon this preindictment delay lacks merit inasmuch as ineffective assistance of counsel does not result from counsel's failure to file a motion that has little or no chance of success (see People v Caban, 5 NY3d 143, 152 [2005]; People v Weatherspoon, 86 AD3d 792, 793 [2011], lv denied 17 NY3d 905 [2011]).
Finally, the arguments raised in defendant's supplemental pro se brief do not require extended discussion. Defendant's jurisdictional challenge to the underlying felony complaints was rendered academic as said accusatory instruments were superseded by a valid indictment (see People v Drayton[*7], 183 AD3d 1008, 1012 [2020], lv denied 35 NY3d 1065 [2020]). Moreover, we reject his claim that he was denied his constitutional right to equal protection of law based upon selective prosecution inasmuch as he "failed to demonstrate that the law was not applied to others similarly situated and that the selective application of the law was deliberately based upon an impermissible standard such as race, religion or some other arbitrary classification" (People v Brown, 52 AD3d 943, 945 [2008] [internal quotation marks, brackets and citations omitted], lv denied 11 NY3d 735 [2008]). To the extent not specifically addressed, defendant's remaining contentions have been reviewed and found to be without merit.
Garry, P.J., Mulvey, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment and orders are affirmed.



Footnotes

Footnote 1: Following his January 2009 arrest on drug charges, defendant pleaded guilty in August 2009 to two counts of criminal sale of a controlled substance in the third degree and was sentenced to a period of incarceration. He was incarcerated throughout the duration of these proceedings.

Footnote 2: Defendant has not raised any issue in either of his briefs with respect to the denial of his second CPL 440.10 motion and, therefore, we deem his appeal in that regard to have been abandoned (see People v Ellis, 182 AD3d 791, 792 n 2 [2020], lv denied 35 NY3d 1026 [2020]).

Footnote 3: "A person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e or she possesses any firearm" (Penal Law § 265.01 [1]).