People v Gaylord (2021 NY Slip Op 03080)





People v Gaylord


2021 NY Slip Op 03080


Decided on May 13, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 13, 2021

110534
[*1]The People of the State of New York, Respondent,
v
Ryan J. Gaylord, Appellant.

Calendar Date:March 16, 2021

Before:Egan Jr., J.P., Lynch, Aarons, Pritzker and Colangelo, JJ.

Mitchell S. Kessler, Cohoes, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Rita M. Basile of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Broome County (Dooley, J.), rendered August 21, 2018, upon a verdict convicting defendant of the crime of predatory sexual assault against a child.
In November 2017, defendant was charged by indictment with two counts of predatory sexual assault against a child stemming from incidents that took place between January 2017 and July 2017 where defendant engaged in multiple acts of sexual conduct with the minor victim, including sexual intercourse, oral sexual conduct and/or anal sexual conduct. After a jury trial, defendant was convicted of the first count of predatory sexual assault against a child and was acquitted of the second count and was sentenced to a prison term of 18 years to life. Defendant appeals.
Defendant contends that County Court's Rape Shield Law ruling deprived him of evidence "essential to his defense" since the evidence "might" have established the victim's motive to fabricate and explained her age-inappropriate knowledge. The Rape Shield Law specifically "prohibits the introduction of 'evidence of a victim's sexual conduct' in a prosecution for a sex offense under Penal Law article 130, unless one of five statutory exceptions applies" (People v Simonetta, 94 AD3d 1242, 1245 [2012], lv denied 19 NY3d 1029 [2012], quoting CPL 60.42). As relevant here, the fifth exception vests discretion in the trial court to allow "evidence of prior sexual conduct to be admitted when such evidence 'is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice'" (People v Williams, 81 NY2d 303, 311 [1992], quoting CPL 60.42 [5]).
After a Huntley hearing, County Court determined that a recorded interview of defendant by a detective was admissible up until the point in the interview where defendant requested an attorney. Subsequently, the People filed an application seeking to have certain portions of the video redacted because defendant mentions to the detective that the victim was allegedly involved in prior incidents where she had sex with her cousin and was inappropriately touched by another man. The People's position was that these portions of the video were not admissible under the Rape Shield Law. County Court granted the People's application, holding that defendant failed to demonstrate that these portions of the interview should be admitted under an exception to the Rape Shield Law, and that any connection between the allegations concerning the prior incidents and the victim's motive to fabricate or her knowledge of sexual activity and the male anatomy is "speculative and so tenuous as to be irrelevant." County Court also precluded cross-examination of the victim regarding her alleged disclosures to her therapist because defendant presented no evidence to establish [*2]a connection between the victim's alleged prior sexual incidents and her apparent motive to fabricate the current allegations.
Based on the foregoing, County Court did not deprive defendant from presenting a defense nor did it deprive defendant of evidence essential to his defense. The evidence defendant sought to introduce regarding the victim's prior sexual conduct is exactly the type of evidence prohibited by the Rape Shield Law (see generally People v Williams, 81 NY2d at 312). Although defendant argues that such evidence might have discredited the victim — which he argues would fall in the interests of justice exception — County Court did not abuse its discretion in limiting exploration of the victim's alleged prior sexual experiences, as such information is not supported by any evidence other than through defendant's testimony, and such irrelevant testimony would likely have confused the jury (see CPL 60.42; People v Youngs, 175 AD3d 1604, 1611 [2019]; People v Serrano-Gonzalez, 146 AD3d 1013, 1016 [2017], lv denied 29 NY3d 952 [2017]). Defendant's related contention regarding the inadequacy of County Court's limiting instruction given after the prosecutor referenced the victim's prior "[l]ife experiences" during the summation is unpreserved inasmuch as defendant requested the limiting instruction and agreed to the language crafted by the court (see People v Delbrey, 179 AD3d 1292, 1296 [2020], lv denied 35 NY3d 969 [2020]; People v Irby, 140 AD3d 1319, 1323 [2016], lv denied 28 NY3d 931 [2016]).
Defendant also asserts that County Court abused its discretion and violated defendant's right to present a defense in precluding trial testimony from the detective who interviewed defendant in relation to the videotaped interview with defendant. "Trial courts are accorded wide discretion in making evidentiary rulings and, absent an abuse of discretion, those rulings should not be disturbed on appeal" (People v Carroll, 95 NY2d 375, 385 [2000] [citation omitted]). However, "[a] court's discretion in evidentiary rulings is circumscribed by the rules of evidence and the defendant's constitutional right to present a defense" (id. at 385; accord People v Hall, 160 AD3d 210, 214 [2018]). Before jury selection, the parties engaged in a lengthy discussion with the court regarding the admissibility of evidence related to the detective's videotaped interview with defendant. The People indicated that they were not using it in their direct case and requested that defendant be precluded from pursuing this line of questioning.[FN1] After a lengthy discussion and arguments, prior to giving preliminary instructions to the jury (and the parties' opening statements), the court ruled that there were not to be any references at trial to the videotaped interview of defendant despite defendant's argument that his entire case rests on the lack of investigation by the police. The court based this ruling on the fact that the statements made to the detective during [*3]the interview are hearsay and there is no relevant purpose to introduce them. Significantly, the court informed defendant that, at any time, he could request an offer of proof outside the presence of the jury if there was a specific reason that the video of the interview should be brought up to the jury.
County Court did not deprive defendant of a fair trial or the right to present a defense when it precluded questioning of the detective and references to the videotaped interview at trial. First, we disagree with defendant that the detective opened the door to this precluded line of questioning when he made one general reference to having conducted interviews of several people, including defendant (compare People v Carroll, 95 NY2d at 385-386; People v Diaz, 20 NY3d 569, 576 [2013]). The People did not pursue anything else related to the interview of defendant nor was there anything elicited from the detective in this regard about the substance of his interview with defendant. The court, on its own, made sure to prevent any further mention of the interview during cross-examination. Second, contrary to defendant's assertion, County Court was not assuming an advocacy role typically reserved for counsel when, during defendant's cross-examination of the detective, the court intervened and a sidebar was held so that the court could explain once again that the prior ruling precluded references to the videotaped interview. The court also specifically explained to the detective that there were not to be any references to the interview. We do not find that, by taking this action, the court abused its discretion and assumed the "advocacy role traditionally reserved for counsel" (People v Kachadourian, 184 AD3d 1021, 1028 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1113 [2020]). Rather, the court sought to "clarify or enlighten an issue" to ensure that its prior ruling was not violated (People v Byrd, 152 AD3d 984, 988 [2017] [internal quotation marks and citation omitted], lv denied 34 NY3d 979 [2019]; see generally People v Arnold, 98 NY2d 63, 67-68 [2002]).
Finally, we do not find that County Court abused its discretion in precluding defendant from questioning the detective about the recorded interview (see People v DeFreitas, 116 AD3d 1078, 1082 [2014], lv denied 24 NY3d 960 [2014]; compare People v Carroll, 95 NY2d at 385). Although defendant claims that he was precluded from his right to present a defense, our review of the detective's testimony establishes that defendant brought out many weaknesses in the investigation, which defense counsel aptly argued about during his summation. Moreover, despite being informed by the court that defendant could request an offer of proof outside of the hearing of the jury if he wanted to pursue a particular line of questioning of the detective, defendant never did so.
Defendant also argues that County Court violated his right to a fair trial when it admitted — over his [*4]objection — testimony from the victim that described an alleged uncharged bad act, without prior disclosure by the People, as the court failed to weigh the testimony's probative value against its potential for unfair prejudice or issue a limiting instruction. It is well settled that "[t]he Molineux rule requires that evidence of a defendant's prior bad acts or crimes be excluded unless it is probative of a material issue other than criminal propensity and its probative value outweighs the risk of prejudice to the defendant" (People v Williams, 156 AD3d 1224, 1229 [2017] [internal quotation marks and citation omitted], lv denied 31 NY3d 1018 [2018]; see People v Knox, 167 AD3d 1324, 1325-1326 [2018], lv denied 33 NY3d 950 [2019]). Such evidence, however, may be admitted if it falls "within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Anthony, 152 AD3d 1048, 1051 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 978 [2017]; accord People v Young, 190 AD3d 1087, 1092 [2021]). When the People seek to admit evidence of a defendant's prior bad acts or crimes in their direct case, "they must make a Ventimiglia showing before presenting the proof in front of a jury. In a Ventimiglia analysis, the trial court addresses first whether the evidence is relevant to a pertinent issue (a question of law typically involving Molineux exceptions) and then makes the discretionary determination whether the probative value outweighs the risk for real prejudice" (People v Moore, 59 AD3d 809, 811-812 [2009] [internal citations omitted]; see People v Till, 87 NY2d 835, 836 [1995]).
At trial, during the People's direct case, the victim testified that every time that she had sex with defendant they would use a condom because defendant did not want her to get pregnant. She also testified that defendant had indicated to her that if she got pregnant, she "needed to find someone else to blame." There came a time in May 2017 that both the victim and defendant thought she might have been pregnant because her period was one week late. The victim stated that defendant appeared to be nervous about it and punched her in the stomach because "if there was a baby, [defendant] would kill it." At this point, defendant objected, arguing that this "incredibly horrible conduct" was not made a part of any Molineux application. County Court overruled the objection without giving a reason, and a limiting instruction was neither requested nor provided.
We agree with defendant that County Court erred in allowing this testimony without defendant having been put on notice and afforded a Ventimiglia hearing to determine its admissibility (see People v Moore, 59 AD3d at 812; People v Holloway, 185 AD2d 646, 646-647 [1992], lv denied 80 NY2d 1027 [1992]). [*5]However, given the overwhelming proof of defendant's guilt, including the victim's detailed testimony that was corroborated by, among other things, her mother's testimony and physical evidence, we find such error to be harmless as there was no significant probability that the jury would have acquitted defendant but for this testimony (see People v Crimmins, 36 NY2d 230, 242 [1975]; People v Saunders, 176 AD3d 1384, 1391 [2019], lv denied 35 NY3d 973 [2020]; People v Holloway, 185 AD2d at 647; see also People v Herring, 227 AD2d 658, 660 [1996], lv denied 88 NY2d 986 [1996]; People v Sherman, 156 AD2d 889, 891 [1989], lv denied 75 NY2d 970 [1990]).[FN2] Furthermore, this evidence was proper inasmuch as it was material and relevant as it is "inextricably interwoven with the charged crimes, provides necessary background [and] completes [the victim's] narrative" (People v Anthony, 152 AD3d at 1051; see People v Young, 190 AD3d at 1092-1093). Additionally, "the probative value of the evidence outweighs its potential for prejudice" (People v Ventimiglia, 52 NY2d 350, 359 [1981]; see People v Young, 190 AD3d at 1093). Lastly, although defendant argues that County Court erred in not giving a limiting instruction as to this testimony, this argument is unpreserved as a limiting instruction was not requested (see People v Flower, 173 AD3d 1449, 1455 [2019], lv denied 34 NY3d 931 [2019]).
Egan Jr., J.P., Lynch, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: We note that defendant previously sought to have the entire recording of the police interview suppressed.

Footnote 2: To the extent that defendant argues that the error cannot be harmless given that the jury was deadlocked, requiring an Allen charge, and that defendant was acquitted of the second count of the indictment, we are unpersuaded. Indeed, in stark contrast to the first count, a review of the record reveals that the proof of the second count, which was based on one alleged instance of rape in the first degree on a particular date, was tenuous. However, defendant was acquitted of this count; thus, in determining whether the error was harmless, we need only examine the quantum of the proof as to the first count of which he was convicted.