People v Saunders (2025 NY Slip Op 07245)

People v Saunders

2025 NY Slip Op 07245

Decided on December 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 24, 2025

109921 113062
[*1]The People of the State of New York, Respondent,
vTroy Saunders, Also Known as Mack and Jack, Appellant.

Calendar Date:November 18, 2025

Before:Reynolds Fitzgerald, J.P., Lynch, Ceresia, Fisher and McShan, JJ.

Martin J. McGuinness, Saratoga Springs, for appellant, and appellant pro se.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Lynch, J.
Appeals (1) from a judgment of the County Court of Schenectady County (Matthew Sypniewski, J.), rendered June 23, 2017, upon a verdict convicting defendant of the crimes of murder in the first degree, murder in the second degree, robbery in the first degree (six counts), robbery in the second degree (two counts), criminal use of a firearm in the first degree (two counts), criminal possession of a weapon in the second degree (two counts) and conspiracy in the fourth degree, and (2) by permission, from an order of said court, entered June 22, 2021, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
On the night of December 8, 2014, the victim and his friend left a bar and drove to the victim's home in the City of Schenectady. Upon arrival, two men approached and attacked the victim, causing the friend to intervene. During the attack, the friend heard multiple gunshots and saw one of the attackers — whom the People allege was defendant — appear to shoot the victim. The two attackers then demanded that the friend hand over his keys and wallet. The victim later died from his injuries.
In March 2016, defendant was indicted on charges of murder in the first degree, murder in the second degree, six counts of robbery in the first degree, two counts of robbery in the second degree, two counts of criminal use of a firearm in the first degree, two counts of criminal possession of a weapon in the second degree and conspiracy in the fourth degree. Prior to trial, defendant requested to proceed pro se. County Court granted the request but ordered defendant's previously assigned attorney (hereinafter standby counsel) to "continue to assist" defendant as needed. Additionally, the People moved for a protective order prohibiting standby counsel from distributing to defendant materials that identified confidential informants or citizen witnesses. County Court granted the motion, permitting defendant to review the materials but not take them back to his cell.
Following trial, defendant was found guilty as charged and moved to set aside the verdict, arguing, among other things, discovery and Brady violations by the People. County Court denied the motion at sentencing and defendant was thereafter sentenced to a prison term of life without the possibility of parole on the first-degree murder conviction, and lesser concurrent terms of incarceration on the remaining counts. Defendant later moved, pursuant to CPL 440.10, to vacate the judgment of conviction on grounds of newly discovered evidence, which motion County Court denied without a hearing. Defendant appeals from both the judgment of conviction and, by permission, the denial of his CPL 440.10 motion.
First, defendant contends that County Court violated his right to self-representation by issuing a protective order which limited his access to certain discovery documents. Under the governing provisions at the time, County Court could "issue a protective order [*2]denying, limiting, conditioning, delaying or regulating discovery . . . for good cause, including . . . substantial risk of physical harm [or] intimidation" of witnesses and "the protection of the confidentiality of informants" (CPL former 240.50 [1]). In an affidavit supporting their request for a protective order, the People stated that they had "reason to believe" that defendant was a member of the Bloods, a violent organized gang. The People pointed to specific examples where cooperating witnesses in other cases involving this gang were threatened or endangered by gang members. The People further stated that they were aware of threats against witnesses in the instant case and that, after one of defendant's accomplices was arraigned, the victim's mother's house was burned down in an act of arson. We agree with County Court that, taken together, these facts constitute good cause for a protective order (see People v Artis,179 AD3d 1440, 1442 [3d Dept 2020]; People v Robinson, 200 AD2d 693, 694 [2d Dept 1994], lv denied 84 NY2d 831 [1994]). Further, we find that County Court's order appropriately balanced defendant's right to prepare a defense against the need for witness safety — a challenge that was particularly pronounced in this case, considering defendant's pro se status. To that end, the protected materials were kept in a separate room that defendant was allowed to utilize each day. The record reflects that defendant had ample time and opportunity to review and take notes on the protected material; he simply could not take the materials back to his cell. Thus, in our view, the protective order "was properly tailored to provide [defendant] with evidence necessary to prepare for trial, while also protecting the [confidential informant and witnesses] from the risk of harm or intimidation" (People v Artis,179 AD3d at 1442; see People v Dixon,42 NY3d 609, 617 [2024]).
Next, defendant argues that County Court erroneously denied his Batson challenge because the People's proffered reasons for striking juror No. 411 were pretextual. "A Batson challenge contemplates a three-step process. 'At step one, the movant must make a prima facie showing that the peremptory strike was used to discriminate; at step two, if that showing is made, the burden shifts to the opposing party to articulate a non-discriminatory reason for striking the juror; and finally, at step three, the trial court must determine, based on the arguments presented by the parties, whether the proffered reason for the peremptory strike was pretextual and whether the movant has shown purposeful discrimination' " (People v Morgan,230 AD3d 864, 870 [3d Dept 2024] [citations omitted], affd ___ NY3d ___ [Oct. 16, 2025], quoting People v Bridgeforth,28 NY3d 567, 571 [2016]). County Court found that defendant met his burden at step one. The People responded that the juror was not interested in the news, was a student and did not work and that they "didn't care for" her answer to one of defendant's [*3]questions indicating her view that jurors should have different perspectives. The prosecutor also stated that she had stricken other jurors for similar reasons. County Court denied the Batson challenge, finding that the reasons proffered by the prosecutor were "sensible" and not pretextual. Upon our review of the record, we agree that the People provided race-neutral, non-pretextual reasons for striking juror No. 411 (see People v Callicut,101 AD3d 1256, 1260-1261 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]). Accordingly, defendant's Batson challenge was properly denied (see People v Goberdhan,241 AD3d 992, 1001 [3d Dept 2025], lv denied 44 NY3d 1011 [2025]; People v May,173 AD3d 1435, 1436 [3d Dept 2019]; People v Callicut,101 AD3d at 1261).
Defendant also challenges County Court's Molineux ruling that allowed the People to question witnesses about defendant's alleged possession of a firearm and his gang affiliation. "In reviewing a Molineux ruling, we must first assess whether the People have identified some issue, other than mere criminal propensity, to which the evidence is relevant" (People v Telfair,41 NY3d 107, 114 [2023] [internal quotation marks, brackets, emphasis and citation omitted]). Here, the People sought to elicit testimony from numerous witnesses regarding a complicated exchange wherein a .25 caliber handgun —the same type of gun later identified as the murder weapon — ended up in defendant's possession shortly before the murder. We agree that the testimony was offered for a proper Molineux purpose, as it is highly probative of defendant's identity as the shooter (see People v Slivienski, 204 AD3d 1228, 1238-1239 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]; People v Terry,196 AD3d 840, 846 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]; People v Wells, 141 AD3d 1013, 1019 [3d Dept 2016], lv denied 28 NY3d 1189 [2017]). As to defendant's alleged gang affiliation, "evidence regarding gang activity can be admitted to provide necessary background, or when it is inextricably interwoven with the crimes charged, or to explain the relationships of the individuals involved" (People v Bailey, 32 NY3d 70, 83 [2018] [internal quotation marks, brackets and citation omitted]). Here, testimony regarding defendant's gang affiliation, and specifically his high status within the gang, was necessary to explain, among other things, the relationships between defendant and the witnesses/accomplices, and why they were initially afraid to come forward with information (see People v Young,190 AD3d 1087, 1092 [3d Dept 2021], lv denied 36 NY3d 1102 [2021]; People v Davis,144 AD3d 1188, 1189 [3d Dept 2016], lv denied 28 NY3d 1144 [2017]; see also People v Anthony,152 AD3d 1048, 1051 [3d Dept 2017], lv denied 30 NY3d 978 [2017]). We also find that the probative value of this testimony outweighed its prejudicial effect, particularly given that County Court issued limiting instructions to the jury as to the purposes for which the evidence could be [*4]considered (see People v Smith,237 AD3d 1367, 1375-1376 [3d Dept 2025], lv denied 43 NY3d 1059 [2025]; People v Davis, 144 AD3d at 1189-1190).
Defendant further argues that County Court erroneously admitted a statement in which he declined a request for a voluntary DNA sample, when that statement had previously been suppressed. We disagree. "When a party opens the door during cross-examination to excluded evidence, the opponent may seek to admit the excluded evidence in order to explain, clarify and fully elicit the question that has been only partially exposed on cross-examination" (People v Heiserman,212 AD3d 949, 950 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1141 [2023]). Here, the People's DNA analyst testified that she had performed DNA testing on a ski mask found at the crime scene, which revealed a male donor that did not match her control samples. Upon defendant's questioning, the analyst clarified that her control samples were from the victim and several of defendant's associates, and that she did not have a control sample from defendant. This line of questioning falsely suggests that the police never sought to obtain a DNA sample from defendant, either due to incompetence or because defendant was not a suspect. Thus, the admission of defendant's prior excluded statement refusing to provide a DNA sample was "reasonably necessary to correct the misleading impression" (People v George,199 AD3d 1064, 1066 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 1146 [2021]; see People v Heiserman,212 AD3d at 951; see also People v Kane, 232 AD3d 1064, 1066 [3d Dept 2024]). We also note that County Court issued a limiting instruction that defendant had the right to refuse voluntary DNA collection, and the jury could not make any inference of guilt from his doing so.
Similarly, we conclude that County Court properly admitted an accomplice's prior consistent statement implicating defendant in the murder. During his testimony, the accomplice disclosed that he had agreed to cooperate with the investigation in exchange for a lesser sentence. On cross-examination, defendant asked the accomplice if he would lose the benefit of the cooperation agreement if his testimony did not implicate defendant, to which the accomplice replied in the affirmative. Thereafter, the People sought to introduce a recorded conversation wherein the accomplice, defendant and another individual implicate themselves in the murder and robbery. Crucially, this conversation occurred before the accomplice was under investigation for the murder, thus predating any motive to falsely testify. In our view, County Court properly permitted the People to play the recording for the jury for the limited purpose of rebutting defendant's claim of fabrication (see People v Seit,86 NY2d 92, 96 [1995]; People v Moore,223 AD3d 1085, 1094 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]; People v Hamilton,176 AD3d 1505, 1508[*5][3d Dept 2019], lv denied 34 NY3d 1128 [2020]).
Finally, we are unpersuaded by defendant's contentions with respect to the denial of his postverdict motions. Prior to sentencing, defendant moved to set aside the verdict pursuant to CPL 330.30, alleging that the People committed a reversible discovery violation by failing to disclose a witness' 24-year-old misdemeanor conviction for petit larceny. To establish a Brady violation, "a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Garrett,23 NY3d 878, 885 [2014] [internal quotation marks and citations omitted]). "Where, as here, the defense did not specifically request the information, the test of materiality is whether there is a reasonable probability that had it been disclosed to the defense, the result [of the trial] would have been different" (id. at 891 [internal quotation marks and citations omitted]). The witness was employed as the chief technical resource officer for the People.[FN1] His testimony primarily served to authenticate video surveillance footage introduced by the People, and he did not specifically identify defendant, or any other persons or vehicles alleged to have appeared on the video. Notably, County Court instructed that the testimony was only to explain how and why the surveillance footage was captured, but it was up to the jury to decide what the footage depicted and whether it was indicative of defendant's guilt. Considering this limiting instruction, the nature of the testimony and the length of time since the misdemeanor conviction, we find that there is no reasonable probability that disclosure would have resulted in a different outcome at trial (see People v Garrett, 23 NY3d at 891-892; People v Adams, 201 AD3d 1031, 1035 [3d Dept 2022], lv denied 38 NY3d 948 [2022]).
County Court also properly denied, without a hearing, defendant's claim that he had newly discovered evidence that the state crime lab was not accredited, as information regarding the lab's accreditation was available to defendant at the time of trial (see CPL 440.10 [1] [g]; People v Lalonde,160 AD3d 1020, 1027 [3d Dept 2018], lv denied 31 NY3d 1118 [2018]). Additionally, even if true, defendant's allegations would, at best, serve to contradict or impeach the DNA analyst's testimony, none of which implicated defendant (see People v Henley,232 AD3d 1117, 1123 [3d Dept 2024], lv denied 43 NY3d 930 [2025]; People v Shaw,174 AD3d 1036, 1038-1039 [3d Dept 2019], lv dismissed 34 NY3d 1081 [2019]). Thus, County Court correctly concluded that no hearing was required, as none of the nonrecord facts sought to be established were material or would entitle defendant to postconviction relief (see People v Cole,217 AD3d 1185, 1185 [3d Dept 2023]). We have examined defendant's remaining contentions and find [*6]them to be unpreserved or without merit.
Reynolds Fitzgerald, J.P., Ceresia, Fisher and McShan, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Insofar as defendant argues that the criminal history of this witness was imputed to the People by virtue of his employment, we note that while "the People have a duty to disclose exculpatory material in their control," this does not extend to a witness' "secret knowledge of his own prior illegal conduct" (People v Johnson,226 AD2d 828, 829 [3d Dept 1996], lv denied 88 NY2d 987 [1996]; accord People v Garrett,23 NY3d at 887-888). Given that the witness' misdemeanor guilty plea occurred more than 20 years ago, and prior to his employment with the People's office, knowledge of said plea cannot be fairly imputed to the People (see People v Ingraham,274 AD2d 828, 829 [3d Dept 2000]).